## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jeff Heimerl and Fred Jahnke, as
Trustees of the IBEW Local No. 292
Health Care Plan; Trustees of the Electrical
Workers Local No. 292 Pension Fund; as
Trustees of the Electrical Workers Local
No. 292 Annuity & 401(k) Fund; as
Trustees of the Electrical Workers Local
No. 292 Vacation & Holiday Fund; and as
Trustees of the Minneapolis
Electrical Industry Board/JATC/LMCC;
and each of their successors,

     Plaintiffs,

v.

Tech Electric of Minnesota, Inc.,

     Defendant.

Case No. 12-CV-612 (SRN/SER)

MEMORANDUM
OPINION AND ORDER

_____

Amanda R. Cefalu, Pamela Hodges Nissen, and Rebecca A. Peterson, Anderson, Helgen, Davis & Nissen, PA, 333 South Seventh Street, Suite 310, Minneapolis, Minnesota 55402, for Plaintiffs

Chad A. Kelsch, Fuller, Seaver, Swanson & Kelsch, P.A., 5500 Wayzata Boulevard, Suite 1025, Golden Valley, Minnesota 55416, for Defendant
_____

SUSAN RICHARD NELSON, United States District Court Judge

     This matter is before the Court on Plaintiffs' Motion in Limine to Exclude Evidence and Testimony of Fund Counsel [Doc. No. 52]. For the reasons set forth herein, Plaintiffs' motion is denied.

## I.      BACKGROUND

A full discussion of the facts of this case is found in this Court's Order of April 4, 2013 (the "Summary Judgment Order" [Doc. No. 43]), which this Court incorporates herein by reference.   In brief, Plaintiffs are trustees for the International Brotherhood of Electrical Workers Local No. 292's (the "IBEW") fringe benefit plans.  Defendant Tech Electric of Minnesota ("Tech Electric") is a Minnesota corporation engaged in the electrical industry.   In October 2000, the IBEW and Defendant signed a Letter of Assent authorizing the Minneapolis Chapter of the National Electrical Contractors Association ("NECA") to be Defendant's collective bargaining representative for all matters related to the Inside Agreement between NECA and the IBEW.  (Order at 2 [Doc. No. 43].)  The Letter of Assent authorized NECA to negotiate with the IBEW on Defendant's behalf and recognized that the IBEW was the exclusive representative of its employees performing electrical construction work in all present and future job sites.  (Id.)  The Letter of Assent also provided that Defendant agreed to be bound by the provisions of the Inside Agreement. (Id. at 3) (citing Roe-Hardie Aff.  2, Exs. A-B [Doc. No. 28]; Schmidt Aff.  2, Exs. 1-2 [Doc. No. 24].)

In addition to the provisions of the Inside Agreement requiring Defendant to make monthly contributions to the fringe benefit plans for which Plaintiffs serve as trustees, the Inside Agreement contains an "evergreen" provision stating that it "shall remain in effect until April 30, 2010, unless otherwise specifically provided herein."  (Id.) (citing Roe-Hardie Aff.  3, Ex. B at § 6.13; §1.01 [Doc. No. 28].)  Under the "evergreen"

2

provision, the Inside Agreement was to "continue in effect from year to year thereafter from May 1 to April 30 of each year, unless changed or terminated in the way later provided herein."  (Id.)

Section 1.02 of the Inside Agreement provides how the agreement may be changed or terminated.  (Id. at 3-4 (citing § 1.02.)  Section 1.02 of the Inside Agreement states:

(a)     Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least ninety (90) days prior to the expiration date of the Agreement or any anniversary date occurring thereafter.

(b)     Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

(c)     The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(d)     In the event that either party, or an Employer withdrawing representation from the Chapter . . ., has given a timely notice of proposed changes and an Agreement has not been reached by the expiration date or by any subsequent anniversary date to renew, modify, or extend this Agreement . . . either party or such an Employer, may serve the other a ten (10) day written notice terminating this Agreement.  The terms and conditions of this Agreement shall remain in full force and effect until the expiration of the ten (10) day period.

. . .

(g)     Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

(Id.)

3

Tech Electric contends that it notified both the IBEW and NECA in writing on November 25, 2009 that it was immediately withdrawing from any affiliation with the IBEW.  (Summ. J. Order at 4 [Doc. No. 43]) (citing Schmitt Aff. ¶ 3, Ex. 3 [Doc. No. 24].) NECA disputes that it ever received the letter.  (Id.) (citing Cefalu Aff. ¶ 6 [Doc. No. 30].) On December 21, 2009, the IBEW responded with a "formal grievance," noting that Defendant had "indicated its intent to prematurely repudiate the Agreement and was advised by the [IBEW] that the terms of the Agreement do not expire until April 30, 2010."  (Id. at 5) (citing Schmitt Aff. ¶ 4, Ex. 4.)   The IBEW requested that the Defendant be "ordered to comply with all terms and conditions of the Agreement through April 30, 2010 for all electrical work performed by the employer within the scope of the [IBEW]'s jurisdiction."  (Id.)

In April 2010, Plaintiffs' counsel, Ms. Cefalu, sent email to defense counsel that appears to acknowledge Defendant's terminated relations with the IBEW.  (Id.) (citing Schmitt Aff. ¶ 5, Ex. 5.)  Specifically, the e-mail stated, "I informed him that we would be more than willing to enter into some kind of joint payment agreement with him and [Defendant] to ensure that benefits owed on work performed through May 2010 (since you abrogated the CBA) are paid."  (Id.)  Additionally, on May 13, 2010, Plaintiffs' counsel sent another e-mail to defense counsel acknowledging that the inside agreement had been terminated stating that April 30, 2010 was "when the [IBEW] contract ended-because you terminated it I believe."  (Id. ¶ 6, Ex. 6.)

On August 5, 2010, Plaintiffs inquired through their attorneys whether Defendant had "re-signed with the [IBEW]."  (Id. ¶ 7, Ex. 7.)  Defense counsel responded on August 10, 2010 that Defendant had "not re-signed with the [IBEW]."  (Id.)  Defendant had no further conversations with the IBEW about its termination of the Letter of Assent and its obligations under the Inside Agreement until Plaintiffs initiated this action.  (Id. ¶ 8.)  During this time, the IBEW did not request any payroll reports, contributions, or an audit from Defendant.  (Id.)

Plaintiffs filed the Complaint in this action on March 8, 2012, seeking to audit Defendant's records for compliance with the terms of the Inside Agreement.  (Compl. [Doc. No. 1].)  In September 2012, the parties filed cross-motions for summary judgment, seeking a determination as to whether Defendant properly terminated the Letter of Assent such that Tech Electric was no longer bound by the Inside Agreement.   The Court denied the parties' cross-motions for summary judgment.  (Summ. J. Order at 15 [Doc. No. 43].)  Specifically, the Court found genuine issues of material fact as to the following:

> The employer's termination defense in this case requires inquiry into both the plain language of the collective bargaining agreement and "the parties' conduct following a timely attempt to terminate."  Laborers Pension Trust Fund-Detroit & Vicinity v. Interior Exterior Specialists Constr. Grp., Inc., 394 F. App'x 285, 292 (6th Cir. 2010) (per curiam).  While there is evidence in the record regarding the correspondence between the parties, there has been no showing about whether the employer used IBEW employees for covered work after its purported termination of the collective bargaining agreement.  Such evidence would provide the court with a "cursory review of the parties' actions," which is a proper inquiry into whether the employer may assert a termination defense in an ERISA action.  Id. at 291.  Additionally, the parties dispute whether the NECA received the purported November 25, 2009 termination notice from Defendant.

(Id. at 14-15.)

In its pre-trial filings, Defendant lists Plaintiffs' counsel as a trial witness.  (Def.'s Witness List [Doc. No. 48].)  Defendant states that counsel will give relevant testimony on the following subjects: "(1) understanding and acknowledgment of Tech Electric's termination of Agreement; (2) two previous lawsuits initiated by Plaintiffs and reduced to judgments; (3) payments and collection activities related to two previous lawsuits."  (Id. at 1.)   Plaintiffs move to exclude evidence and testimony "relating to settlement correspondence with Defendant."  (Pls.' Mot. in Limine at 1 [Doc. No. 53].)  Plaintiffs argue that the evidence and testimony should be excluded for two reasons: (1) the underlying email communications between Scott Schmitt, the owner of Tech Electric, and Ms. Cefalu, Plaintiffs' counsel, are inadmissible under Fed. R. Evid. 408 as evidence regarding settlement; and (2) communications between Tech Electric and Plaintiffs' counsel are inadmissible parol evidence.  (Id. at 2-5.)  Plaintiffs also argue that because the Summary Judgment Order defined the relevant factual scope to facts regarding "the conduct of the parties," and the "parties' actions," Ms. Cefalu's testimony and the exhibits are not relevant because she is not a "party." (Id. at 3) (quoting Summ. J. Order at 14-15). Plaintiffs also argue that they did not authorize their counsel to terminate the collective bargaining agreement, in any event.  (Id. at 3.)

Defendant argues in response that Tech Electric does not intend to introduce any evidence regarding the content of settlement discussions between the parties. (Def.'s

Opp'n to Pls.' Mot. In Limine at 1 [Doc. No. 58].)  Those settlement negotiations,

Defendant argues, were unrelated to this matter and pertained to payment arrangements on

two judgments obtained in prior litigation. (<u>Id</u>. at 1-4.)  Instead, Tech Electric intends to

elicit testimony from Plaintiffs' counsel that she stated that Defendant had terminated its

relationship under the Inside Agreement, an issue wholly unrelated to their settlement

negotiations. (<u>Id</u>.)  Moreover, coupled with evidence that Plaintiffs treated Tech Electric as

having terminated the Agreement for a lengthy period of time, Defendant argues that

counsel's testimony demonstrates that Plaintiffs ratified that termination (<u>Id</u>.).

## II.   DISCUSSION

As a threshold matter, facts concerning the parties' conduct and actions, along with

the terms of the Letter of Assent and Inside Agreement, are relevant to the ultimate

question of whether the termination defense applies to Defendant.  (Summ. J. Order at 12

[Doc. No. 43].)  <u>Laborers Pension Trust</u>, 394 F. App'x at 291.   The fact that Plaintiffs'

counsel is not technically a "party," is of little consequence.  She acted on behalf of her

clients, who are parties.  Moreover, given that Plaintiffs' counsel communicated directly

with Mr. Schmitt of Tech Electric, the Court assumes that he was unrepresented at the

time.  Since Plaintiffs were represented by counsel, the only person with whom Mr.

Schmitt <u>could</u> <u>communicate</u> was Plaintiffs' counsel – he could not communicate directly

with a represented party.  <u>See</u> Minn. R. Prof. Conduct 4.2.

Regarding Plaintiffs' argument that the proposed testimony and evidence

constitutes impermissible parol evidence, the Court likewise disagrees.  As discussed in

7

detail in the Summary Judgment Order, the question of whether a defendant has successfully terminated a collective bargaining agreement may be resolved by "examining the language of the collective bargaining agreement in conjunction with the actions of the parties." (Summ. J. Ord. at 11 [Doc. No. 43]) (citing <u>Laborers Pension Trust</u>, 394 F. App'x at 291). In this specific ERISA context, examination of the parties' actions and conduct, in conjunction with the terms of the collective bargaining agreement, is permissible. Plaintiffs argue that their counsel lacked the authority to acknowledge or ratify termination of the Inside Agreement. That issue, however, may be explored at trial, but is not determinative of the instant motion.

Plaintiffs also argue that the evidence is subject to exclusion pursuant to Federal Rule of Evidence 408. Rule 408 does not exclude all evidence of statements referencing settlement or the compromise of a claim, but only prohibits the admission of such evidence "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). The rule itself permits the admission of such evidence when offered "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." <u>Id</u>. 408(b). Subsection (b) therefore provides an illustrative list of possible uses of such evidence.[1] The 2011 Advisory

---

[1] Under the "another purpose" exception, courts have admitted evidence of settlement or compromise offers in a variety of legal contexts. <u>See</u>, <u>e.g.</u>, <u>PRL USA Holdings, Inc. v. United States Polo Assoc., Inc.</u>, 520 F.3d 109, 113 (2d Cir. 2008) (affirming admissibility of parties' earlier settlement discussions for "another purpose" of establishing estoppel in subsequent infringement suit where trademark owner told

Committee Notes state that "if offered for a purpose not barred by the Rule, [the] admissibility [of such evidence] remains governed by the general principles of Rules 402, 403, 801, etc."   Discussing Rule 408 in <u>Weems v. Tyson Foods, Inc.</u>, 665 F.3d 958, 966 (8th Cir. 2011), the Eighth Circuit stated, "Evidence relating to a compromise offer is admissible if 'offered for "another purpose," i.e., for a purpose other than to prove or disprove the validity of the claims that the offers were meant to settle.'") (quoting <u>Trebor Sportswear Co. v. The Limited Stores, Inc.</u>, 865 F.2d 506, 510 (2d Cir.1989)).

"Rule 408 only prohibits admitting compromise evidence relating to a 'claim' that was disputed when the settlement negotiations or offer to compromise took place." <u>Weems</u>, 655 F.3d at 965 (citing <u>Crues v. KFC Corp.</u>, 768 F.2d 230, 233 (8th Cir. 1985)). "A dispute exists for Rule 408 purposes so long as there is 'an actual dispute or difference of opinion' regarding a party's liability for or the amount of the claim. <u>Id.</u> (quoting <u>Affiliated Mfrs. v. Aluminum Co. of am.</u>, 56 F.3d 521, 527 (3d Cir. 1995)).  Defendant here does not seek to disprove the validity of the claims that the offers were meant to

---

potential defendant that it would not assert a claim of infringement and recipient of assurance relied on the assurance to its substantial detriment); <u>CCMS Publ'g Co., Inc. v. Dooley-Maloof, Inc.</u>, 645 F.2d 33, 37-38 (10th Cir. 1981) (holding no violation of Rule 408 where district court admitted evidence of previous settlement offer to rebut defendant's subsequent claim that it had been willing to accept previous offer); <u>C&E Servs., Inc. v. Ashland Inc.</u>, 539 F. Supp.2d 316, 318-19 (D. D.C. 2008) (finding admissible as evidence offered for "another purpose," settlement agreement between government and subcontractor to show that subcontractor made misrepresentations upon which contractor allegedly relied); <u>ABM Indus., Inc. v. Zurich Am. Inc. Co.</u>, 237 F.R.D. 225, 228 (N.D. Cal. 2006) (admitting evidence of mediation and settlement negotiations when offered for "another purpose" – to demonstrate that the defendants unreasonably denied coverage.)

settle, i.e., Defendant's amounts due under the contract through April 30, 2010.  To the contrary, the evidence in question shows Defendant's willingness to try to meet those obligations.  Mr. Schmitt and Ms. Cefalu's emails concern whether the union would agree to a percentage of Defendant's future payments from other sources to meet some of Tech Electric's obligations through April 30, 2010.  (See, e.g., Email of 4/22/10, Ex. 2 at 7 to Cefalu Aff. [Doc. No. 30-2].)  Here, the gravamen of Plaintiffs' Complaint is that Defendant breached the terms of the Inside Agreement by failing to pay all contributions due from May 2010 through the date of filing the Amended Complaint, or through January 2012, and by failing to timely submit fringe benefit reports from April 2010 to the "present."  (Am. Compl. ¶ 13 [Doc. No. 18].)   If the email settlement discussions concerned the validity of these claims, then such evidence or testimony would be inadmissible under Rule 408.  Here, however, the scope of the settlement discussions did not concern these claims and the proposed evidence will be offered for the factual statements contained in the documents.  Accordingly, the Court denies Plaintiffs' motion to exclude this evidence and testimony under Rule 408.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

For the reasons set forth herein, Plaintiffs' Motion in Limine to Exclude Evidence and Testimony of Fund Counsel [Doc. No. 52] is **DENIED**.

Dated:   July 3, 2013

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge